IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY T. POWELL, | No. C 08-04011 CW (PR) |
|     Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
|   v. | |
| JAMES A. YATES, Warden, | |
|     Respondent.     / | |

    Petitioner Quincy T. Powell is a prisoner of the State of California, incarcerated at Pleasant Valley State Prison.  On August 21, 2008, Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his 2006 state conviction.  Respondent filed an answer on April 10, 2009.  On June 25, 2010, Petitioner filed a pleading expressing his disagreement with Respondent's answer.  Although filed outside the deadline in which Petitioner was ordered to file his traverse, the Court construes this pleading as Petitioner's traverse and considers it as such.  Having considered all of the papers filed by the parties, the Court DENIES the petition for writ of habeas corpus.

BACKGROUND

I. Procedural History

On December 7, 2006, an Alameda County superior court jury convicted Petitioner of one count of second degree robbery, in violation of California Penal Code § 1170.12(c)(2)(A). After Petitioner waived his right to jury trial on three prior convictions, the trial court found all the allegations true. On March 16, 2007, the trial court sentenced Petitioner to twenty-eight years to life in prison.

Petitioner timely appealed to the California court of appeal claiming that there were two reversible errors at trial. On February 26, 2008, the court of appeal filed a written opinion rejecting both claims. Resp.'s Ex. 8. Petitioner proceeded to the California Supreme Court, which denied his petition in a one sentence order on May 14, 2008. Resp.'s Ex. 10.

II. Statement of Facts

> Around 11:00 a.m. on October 5, 2005, a robbery occurred at the main branch of the Fremont Bank in Fremont. A man approached a teller, Janny Avon, asked for a withdrawal slip, and wrote on it that he had a gun. After the man said he was "serious," Avon emptied her cash drawer, giving the man $1,873.78, which included five $20 "bait" bills for which the serial numbers had been recorded. Both Avon and a second teller, Alicia Abang, subsequently identified defendant as that man, and a surveillance tape of the robbery was played for the jury. FN1. After the robber had fled with the money and police had secured the area around the bank, Jason Merris approached the officers and told them he believed he had driven the robber to the bank and knew where he could be found. Merris gave the officers defendant's name and directed them to a motel room in Newark, where defendant (who initially denied his identity) was found, together with $1,877 plus change, including the five $20 bills with the recorded serial numbers, and clothing matching that worn by the robber. After defendant had been arrested, a detective arranged a telephone call in which defendant thought he was talking to Avon, and he apologized to her. At trial, the defense contended that the

>evidence did not prove beyond a reasonable doubt that defendant was the person who committed the robbery.
>
>FN1.  The defense called one witness, Laura Janek, who had spoken to the robber while waiting in line just before the robbery, and she did not believe that defendant was the person with whom she had spoken.

Resp.'s Ex. 8 at 2.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

3

1 court decides a case differently than [the Supreme] Court has on a
2 set of materially indistinguishable facts."  Williams, 529 U.S. at
3 412-13.  A state court decision is an "unreasonable application of"
4 Supreme Court authority, under the second clause of § 2254(d)(1),
5 if it correctly identifies the governing legal principle from the
6 Supreme Court's decisions but "unreasonably applies that principle
7 to the facts of the prisoner's case."  Id. at 413.  The federal
8 court on habeas review may not issue the writ "simply because that
9 court concludes in its independent judgment that the relevant
10 state-court decision applied clearly established federal law
11 erroneously or incorrectly."  Id. at 411.  Rather, the application
12 must be "objectively unreasonable" to support granting the writ.
13 Id. at 409.

14 "Factual determinations by state courts are presumed correct
15 absent clear and convincing evidence to the contrary."  Miller-El,
16 537 U.S. at 340.  A petitioner must present clear and convincing
17 evidence to overcome the presumption of correctness under
18 § 2254(e)(1); conclusory assertions will not do.  Id.  Although
19 only Supreme Court law is binding on the states, Ninth Circuit
20 precedent remains relevant persuasive authority in determining
21 whether a state court decision is objectively unreasonable.  Clark
22 v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

23 If constitutional error is found, habeas relief is warranted
24 only if the error had a "'substantial and injurious effect or
25 influence in determining the jury's verdict.'"  Penry v. Johnson,
26 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S.
27 619, 638 (1993)).

28

4

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d).  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  In the present case, the California court of appeal is the highest court that addressed Petitioner's claims.

## DISCUSSION

In this case, the trial court permitted the jurors to submit written questions to the witnesses during trial, which were subject to review and approval by the parties and the court.  After Detective Holguin testified, one juror submitted the following question: "Did you get a fingerprint from the pen Quincy used at the Fremont Bank?"  Record Transcript ("RT") 379.  Neither party objected to the question and the court read the question as written.  Resp.'s Ex. 3 at 7; RT 379.

Petitioner raises two claims related to this exchange in his federal habeas petition.  First, he alleges that the juror committed misconduct by prematurely determining his guilt prior to deliberations as evidenced by the juror's submitted question.  Petitioner argues that the form of the question and the use of Petitioner's first name rather than "suspect" or "robber" indicates that the juror improperly predetermined Petitioner's guilt and that the juror's misconduct prejudiced him.

Next, Petitioner alleges that when the trial court read the question aloud as written, the trial court essentially directed a

5

1 verdict against him because it demonstrated that the trial court
2 agreed with the juror's perception.
3 I.  Juror misconduct
4     The Sixth Amendment guarantees to the criminally accused a
5 fair trial by a panel of impartial jurors.  U.S. Const. amend. VI;
6 see <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).  "Even if only one
7 juror is unduly biased or prejudiced, the defendant is denied his
8 constitutional right to an impartial jury."  <u>Tinsley v. Borg</u>, 895
9 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted).  A
10 court confronted with a colorable claim of juror bias will
11 generally conduct an investigation.  <u>Davis v. Woodford</u>, 384 F.3d
12 628, 652-53 (9th Cir. 2004).  Where there is no evidence that
13 premature deliberations took place, however, an investigation may
14 not be necessary, especially if the judge provides an appropriate
15 instruction.  <u>Id.</u>  Further, premature deliberations are not as
16 serious as private communication, contact or tampering.  <u>Id.</u> at
17 653.  "What is crucial is 'not that jurors keep silent with each
18 other about the case but that each juror keep an open mind until
19 the case has been submitted to the jury.'"  <u>Id.</u> at 653 (quoting
20 <u>United States v. Klee</u>, 494 F.2d 394, 396 (9th Cir. 1974)); see
21 <u>Davis</u>, 384 F.3d at 651-53 (where juror submitted note to judge
22 before deliberations saying "we" wanted to know whether defendant
23 would remain in prison if jury returned a noncapital sentence, no
24 error where judge provided a detailed instruction that jurors
25 should presume that state officials would properly perform their
26 duties when executing the sentence).  "The test is whether or not

the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." Klee, 494 F.2d at 396.

The California court of appeal addressed this claim in the following passage:

> On appeal, defendant contends that "[i]n posing the question using the name Quincy rather than using a term such as 'suspect' or 'robber,' this juror revealed that he or she had prematurely determined that Mr. Powell was the robber, in a case in which the defense was identity. This prejudging of the pivotal contested issue in the question was juror misconduct." There is of course no dispute about a defendant's constitutional right to be tried by an impartial jury (e.g., In re Hamilton (1999) 20 Cal. 4th 273, 293-294), nor is there any dispute that prejudgment by a juror is misconduct that may require vacating a verdict (People v. Brown (1976) 61 Cal. App. 3d 476). Moreover, one must agree that the juror's question was not phrased properly and should have referred to the user of the pen in some neutral manner that did not imply that it was necessarily the defendant. However, we cannot agree that the lay juror's inartful manner of expressing the question necessarily demonstrated that the juror had predetermined defendant's guilt. Indeed, if the juror had already decided that defendant was the robber, it is unlikely that he or she would have asked the question. Juror misconduct must be "'established as a demonstrable reality, not as a matter of speculation.'" (People v. Hord (1993) 15 Cal. App. 4th 711, 725.) Whether a juror or prospective juror has a prejudiced state of mind is "'ordinarily an issue of fact left to the sound discretion of the trial judge.'" (People v. Clay (1984) 153 Cal. App. 3d 433, 450.) Here, the implication improperly embedded in the question apparently did not occur to anybody at the time, since no objection was raised to the form of the question and the court did not rephrase the question. Moreover, the jurors were properly instructed not to form any conclusions until their deliberations began and they are presumed to follow those instructions. (People v. Mickey (1991) 54 Cal. 3d 612, 689, fn.17.) In all events, the defense certainly has failed to carry its burden of establishing juror misconduct. (People v. Stanley (1995) 10 Cal. 4th 764, 836; see Kimic v. San Jose-Los Gatos etc. Ry. Co. (1909) 156 Cal. 379, 400.)

Resp.'s Ex. 8 at 3.

Taking the state court's factual findings as presumptively correct, as this Court must do, 28 U.S.C. § 2254(e)(1), Petitioner has not demonstrated clear or convincing evidence that the juror's

question was a predetermined judgment rather than merely a sloppily phrased inquiry. The question itself demonstrates that the juror was looking for more evidence of guilt by inquiring whether Petitioner's fingerprints were found on the pen.

Moreover, jury misconduct that occurs during trial and that can be weighed in the context of other evidence presented generally constitutes trial error subject to harmless-error analysis. Cf. Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005) (noting there is no Supreme Court precedent holding that either juror bias, or the failure by the trial court to hold a hearing to investigate potential juror bias, constitutes structural error); see, e.g., Fields v. Brown, 503 F.3d 755, 781 (9th Cir. 2007) (en banc) (court need not decide whether jury's use of juror's notes on Bible passages was juror misconduct because it had no substantial and injurious effect or influence on the verdict).

In light of the overwhelming evidence of identity at trial, despite the fact that the disputed issue at trial was identity, Petitioner has failed to demonstrate any prejudice. Petitioner was identified by two bank tellers who both noted a cut near the Petitioner's eye, RT 184, 185-86, 241, 245, 266; Petitioner was seen on a bank surveillance video, RT 271; the man who drove Petitioner to the bank identified him and gave police Petitioner's address, 227-28, 298; and Petitioner was found shortly after the robbery with the same amount of money taken from the bank, which included the bait bills, RT 355-56, 358, 362-68. In addition, on this record, there is no indication that the juror was biased or prejudged the Petitioner. Nor was there any sign that the juror

was unable or unwilling to decide the case solely on the evidence presented at trial. Furthermore, the trial court instructed the jury not to form any conclusions until deliberations. RT 155. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) (stating that jurors are presumed to follow the court's instructions).

Accordingly, the California court of appeal's decision denying relief on this claim was not contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d).

II. Judicial misconduct

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. See In re Murchison, 349 U.S. 133, 136 (1955). A trial judge "'must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the appearance of advocacy or partiality.'" Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (quoting United States v. Harris, 501 F.2d 1, 10 (9th Cir. 1974)). It is not enough that a federal court not approve of a state judge's conduct. Objectionable as a judge's conduct might be, when considered in the context of the trial as a whole it may not be of sufficient gravity to warrant the conclusion that fundamental fairness was denied. See Duckett v. Godinez, 67 F.3d 734, 741 (9th Cir. 1995) (citations omitted). A claim of judicial misconduct by a state judge in the context of federal habeas review asks whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Id. at 740.

9

The California court of appeal addressed this claim as follows:

> Defendant also argues that the judge's reading of the question "conveyed to the jury the message the judge believe[d] the defendant was the perpetrator" and "effectively directed a finding that [defendant] was the perpetrator." Again, there is no question that the court may not direct a guilty verdict (e.g., People v. Figueroa (1986) 41 Cal. 3d 714, 724), but that is hardly what occurred here. In context it was unmistakably clear that the question did not originate with the judge, but that the judge was simply reading "in no particular order" three questions that jurors wished to ask. No juror could reasonably have understood that in reading the question the judge was expressing any question of his own, much less any opinion or directive. Moreover, the jury was properly instructed that questions do not constitute evidence and that "It is not my role to tell you what your verdict should be. Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be." The presumption that the jury followed the court's instructions applies to this contention as well.

Resp.'s Ex. 8 at 3-4.

Again, Petitioner has not demonstrated clear or convincing evidence that the state court's factual finding is incorrect. 28 U.S.C. § 2254(e)(1). Both parties reviewed the juror's question and neither objected to its substance or form. The trial court read the submitted question as it was written. In light of the overwhelming evidence against Petitioner, especially as compared to the isolated instance of the challenged submitted question, the trial court's reading of the question did not render the trial fundamentally unfair. See, e.g., Duckett, 67 F.3d at 734 (concluding no judicial misconduct even after the judge inserted his own questioning to witnesses, laid the foundation for evidence on behalf of the State, and expressed clear hostility toward defense counsel and defense witnesses).

10

Accordingly, the California court of appeal's decision denying relief on this claim was not contrary to or an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition).  Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment and close the file.  All pending motions are terminated.  Each party shall bear his own costs.

IT IS SO ORDERED.

Dated: 11/23/2010

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT<br>
FOR THE<br>
NORTHERN DISTRICT OF CALIFORNIA

QUINCY T POWELL,

        Plaintiff,

  v.

SAN QUENTIN STATE PRISON et al,

        Defendant.

Case Number: CV08-04011 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 23, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Quincy T. Powell E-24418
C-5-125-U
Pleasant Valley State Prison
P.O. Box 8503
Coalinga, CA 93210

Dated: November 23, 2010

                              Richard W. Wieking, Clerk
                              By: Nikki Riley, Deputy Clerk

12